**Hedrick SMITH et al., Plaintiffs,**

v.

**Richard M. NIXON et al., Defendants.**

Civ. A. No. 76–798.

United States District Court, District of Columbia.

April 6, 1978.

Leon Friedman, Hempstead, N.Y., for plaintiffs.

Lubomyr M. Jachnycky, Dept. of Justice, Washington, D.C., for defendants.

Douglass J. McCollum, Washington, D.C., for C&P.

## OPINION

JOHN LEWIS SMITH, Jr., District Judge.

This action under the First, Fourth and Ninth Amendments to the Constitution and Title 18, U.S.C. §§ 2511 and 2520 seeks declaratory and injunctive relief and money damages for defendants' allegedly illegal wiretapping of plaintiffs' home telephone. Plaintiffs are Hedrick Smith, a former diplomatic correspondent for the New York Times, his wife, Ann B. Smith, and their three minor children, Laurel Ann Smith, Jennifer Laurence Smith and Sterling Scott Smith. · Defendants are Richard M. Nixon, Henry A. Kissinger, John N. Mitchell, H. R. Haldeman, John Erlichman, William C. Sullivan, Cartha DeLoach, Clarence Kelley, Griffin Bell (hereinafter cited as federal defendants) and the Chesapeake and Potomac Telephone Company (C&P). The matter is before the Court on defendant Nixon's Motion to Dismiss, defendant C&P's Motion to Dismiss and federal defendants' Motion to Dismiss.

The electronic surveillance which prompted this suit was one of several such actions occurring in the same approximate time period. In early 1969 officials of the Nixon Administration were concerned about the leaking of confidential foreign policy information which appeared to be detrimentally affecting progress towards reaching solutions to several ongoing world problems, including the Vietnam war, the SALT talks, and Sino-American relations.

Between February and April of 1969 these officials were particularly worried about references to classified information and certain foreign policy documents appearing in the press. The leaks related to United States policies in Vietnam, China, the Soviet Union, Europe and the Mideast. After consulting with Attorney General Mitchell, National Security Affairs Advisor Kissinger, and FBI Director Hoover, President Nixon authorized a program of electronic surveillance of individuals suspected of leaking information injurious to the national defense and foreign policy of the United States. Those to be wiretapped would be selected on the basis of access to information, material in security files, and evidence developed as the surveillance proceeded.

On June 4, 1969 such electronic surveillance was instituted on the residence telephone of Hedrick Smith at 3409 Patterson Street, N.W., Washington, D.C. The surveillance lasted for eighty-nine (89) days, until August 31, 1969. Plaintiffs also allege that "disclosures" of information obtained thereby were made within the executive branch during the period of alleged surveillance as well as in June 1970 and in 1971.

Plaintiffs in this case contend that the surveillance violated Title 18 U.S.C. §§ 2511 and 2520, statutory provisions legislatively contained in the Omnibus Crime Control and Safe Streets Act of 1968, their "right to privacy and security against unreasonable searches and seizures guaranteed by the First, Fourth and Ninth Amendments," and that it was "unreasonable and illegal."

In a similar case recently decided in this jurisdiction, this Court held that the plaintiffs had no cause of action under the Omnibus Crime Control and Safe Streets Act of 1968. *Halperin v. Kissinger,* 424 F.Supp. 838 (D.C.1976). Although this statute was in effect when the wiretapping actions in both cases occurred, the legality of warrantless national security wiretaps had been considered only in subsequent judicial decisions. *United States v. United States District Court (Keith),* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (June 19, 1972); *Zweibon v. Mitchell,* 170 U.S.App.D.C. 1, 516 F.2d 594 (June 23, 1975); *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). These decisions clarified the ambiguity surrounding national security wiretaps.

■ The confusion centered around the interpretation of 18 U.S.C. § 2511(3) which reads in part:

Nothing contained in this chapter or in section 605 of the Communications Act of 1934 . . . shall limit the constitutional power of the President to take such measures as he deems necessary . . . to obtain foreign intelligence information deemed essential to the security of the United States, or to protect national security information against foreign intelligence activities.

Until the *Keith* and *Zweibon* decisions, in 1972 and 1975 respectively, it was evident that the meaning and limits of § 2511(3) were open issues. In *Halperin,* this Court ruled that given the confused state of the law and the 30-year history of similar Executive actions the defendants "should not be held to have acted at their peril in [that] vacuum" and denied retroactive application of *Keith* and *Zweibon.* The same reasoning applies to deny retroactive application of *Keith* and *Zweibon* in this case.

Considering plaintiffs' Fourth Amendment unreasonable search and seizure allegations, there is no doubt that even if § 2511(3) and prior presidential practice could be invoked to authorize warrantless wiretaps, national security surveillance still must be "exercised in a manner compatible with the Fourth Amendment." *Keith, supra,* 407 U.S. at 320, 92 S.Ct. at 2138. In determining the reasonableness of the wiretap, the Court must balance the duty of the government to protect security with the violation of plaintiffs' privacy and free expression. *Keith, supra,* 407 U.S. at 314–5, 92 S.Ct. 2125.

In this case, the surveillance continued for a period of eighty-nine (89) days. The Supreme Court has required "particular, precise, and discriminate" procedures in many Fourth Amendment cases. *See e.g., Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *Osborn v. United States,* 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966). The Justice Department complied with this by requiring renewal and review of national security electronic interceptions every ninety (90) days. The surveillance in this case was carried out within the "particular, precise and discriminate" limits set by the Justice Department. Under the then existing guidelines former Attorney General Mitchell would not have been required to review the surveillance until one day after it was removed from the Smith telephone. This eighty-nine day wiretap, conducted with stated limits and then discontinued, is far different from the wiretap in *Halperin,* which continued for twenty one months without any review, evaluation or attempt to minimize the interceptions.

18 U.S.C. 2511(3) and prior presidential practice set forth a good faith basis for initiating the wiretap, and it was reasonably conducted within Department of Justice regulations specifically concerning national security. This surveillance, therefore, was not unreasonable and did not violate the plaintiffs' constitutional rights.

■ The Court's reasoning in *Halperin* relative to C&P applies equally to the instant situation. There the Court stated "C&P's limited technical role in the surveillance as well as its reasonable expectation of legality cannot give rise to liability for any statutory or constitutional violation." There was no wrongdoing in this case by

C&P. It acted in reliance upon a request from the highest Executive officials and with assurance that national security matters were involved.

The action complained of occurred in 1969 and suit was not instituted until 1976. Plaintiffs, realizing that their claims would be barred by the applicable three year statute of limitations, rely on *Cole v. Kelley,* 438 F.Supp. 129 (C.D.Calif.1977). They assert that the doctrine of fraudulent concealment applies to wiretapping cases to toll the statute of limitations. The difference between *Kelly* and the present case goes to the very heart of the fraudulent concealment doctrine. In *Kelley* the government admitted that the use of a bug in that case was illegal and evidence obtained therefrom tainted. *Cole v. Kelley,* 438 F.Supp. at 136. Here, the surveillance was initiated in good faith and within guidelines specifically relating to national security matters.

In *Fitzgerald v. Seamans,* 180 U.S.App. D.C. 75, 553 F.2d 220 (1977), cited by plaintiffs, the Court in discussing fraudulent concealment states that it

has been applied, for example, in securities cases dealing with fraudulent or deceptive practices, and in medical malpractice cases, where the "concealment" element is particularly supported by the combination of fiduciary relation and layman's reliance on experts. (citations omitted)

There is no relationship between the parties necessitating disclosure of the activities and no legal basis supporting plaintiffs' claim of fraudulent concealment.

Accordingly, the Motions to Dismiss filed by defendant Nixon, defendant C&P, and federal defendants are granted.