606 F.2d 1183
 196 U.S.App.D.C. 276
 Hedrick SMITH and Ann B. Smith, suing Individually and on
Behalf of their Minor Children, Laurel Ann Smith,
Jennifer Laurence Smith, and Sterling
Scott Smith, Appellants,
v.
Richard M. NIXON et al.
 No. 78-1526.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 9, 1979.
Decided July 12, 1979.
 
 Leon Friedman, New York City, with whom Floyd Abrams, New York City, Gerald J. Brown, Washington, D.C., and James C. Goodale, New York City, were on brief, for appellants.
 Lubomyr M. Jachnycky, Atty., Dept. of Justice, Washington, D.C., with whom Robert L. Keuch, Deputy Asst. Atty. Gen., and George W. Calhoun and Benjamin C. Flannagan, Attys., Dept. of Justice, Washington, D.C., were on brief, for appellees Richard M. Nixon et al.
 John M. Kelleher, Washington, D.C., with whom Michael Boudin, Timothy A. Harr, and Douglass J. McCollum, Washington, D.C., were on brief, for appellee Chesapeake & Potomac Tel. Co.
 Before WRIGHT, Chief Judge, ROBINSON, Circuit Judge, and GESELL,* District Judge.
 Opinion for the court filed by Chief Judge J. SKELLY WRIGHT.
 J. SKELLY WRIGHT, Chief Judge:
 
 
 1
 Appellants seek civil damages from 11 federal officials and the Chesapeake & Potomac Telephone Company (C&P) for violating their constitutional and statutory rights by wiretapping their home telephone for 89 days in 1969.[1] Hedrick Smith, a reporter for the New York Times, and his family charge that the electronic surveillance deprived them of their First Amendment rights, constituted an unreasonable search and seizure under the Fourth Amendment, and did not comply with the requirements of Title III of the Omnibus Crime Control and Safe Streets Act of 1968.[2] The District Court, granting defendants' motions to dismiss, ruled that the wiretap satisfied the requirements of Title III and the Fourth Amendment, and, moreover, that the Smiths' suit was barred by the District of Columbia statute of limitations. We reverse.
 
 
 2
 * The Smith wiretap was part of the same surveillance program involved in Halperin v. Kissinger, which we also decide today.[3] Authorized by President Richard Nixon and implemented by Attorney General John Mitchell and FBI Director J. Edgar Hoover, the program was designed to identify employees who were disclosing confidential Government information to the press in the first half of 1969.[4] Administration officials were concerned that continued disclosures might jeopardize national security. Surveillance targets were to be chosen according to three criteria: (1) those who had access to information that had "leaked"; (2) those with unfavorable entries in their security files; and (3) those otherwise suspected by the FBI of involvement in leaking.[5]
 
 
 3
 On June 3, 1969 a story by Smith appeared in the New York Times detailing the contemplated American approach to negotiations with Japan over the return of Okinawa to Japanese control.[6] Because no formal discovery has yet taken place, we cannot be certain of events between the appearance of the story and installation of the wiretap. Plaintiffs direct our attention to a June 4 memorandum from FBI Director Hoover to the Attorney General apparently seeking authorization to wiretap the Smiths' home telephone:
 
 
 4
 On this date Dr. Kissinger has requested that a telephone surveillance be placed on ( ), who is also known as ( ). He is a correspondent with ( ) and has been in contact with the individuals on whom telephone surveillances have been placed. He resides at ( ) and has telephone number ( ). The files of this Bureau contain no pertinent information of an internal security nature concerning him. ([7]
 
 
 5
 The Smith wiretap was in place from June 4 to August 31, when the Smiths moved out of the Washington area. Although no records of the surveillance have yet been made public, it appears that the procedures followed were roughly the same as those used in the Halperin wiretap.[8] The only formal records kept of the Halperin surveillance were summary letters by the FBI agents conducting the surveillance, which were then submitted to President Nixon, through presidential counsel John Ehrlichman, and to Kissinger.[9]
 
 
 6
 The first definite public identification of Smith as a surveillance target came on May 11, 1973, although Smith contends that, because he was then on assignment in Russia for his newspaper, he was not fully aware of the wiretapping program until some time thereafter.[10] This suit was filed on May 10, 1976, with an amended complaint submitted ten months later.[11] On May 8, 1978, following oral argument on defendants' motions to dismiss, the District Court granted those motions.
 
 II
 
 7
 Appellees insist that even though the District Court purported to dismiss this suit under Rule 12 of the Federal Rules of Civil Procedure, the decision should be affirmed as a grant of summary judgment under Rule 56.[12] This course, appellees continue, is dictated by appellants' submission of affidavits in support of their case and by reference to extra-record evidence in appellants' memoranda to the District Court.[13] Thus appellees urge that the District Court properly applied the standards for summary judgment under Rule 56, regardless of the court's statement that it was granting motions to dismiss.[14]
 
 
 8
 We agree with appellees' characterization of the District Court's actions, but do not think it substantially alters the issue before that court or this one: Whether, granting all favorable inferences to the party opposing the motion, there exists any genuine issue of material fact between the parties.[15] If there is such an issue, the court may neither dismiss the suit under Rule 12[16] nor grant summary judgment.[17] As the moving party, appellees (defendants below) bear the burden of showing that there are no genuine issues of material fact.[18]III
 
 
 9
 Our disposition of the substantive claims presented by the Smiths is controlled by our decision today in Halperin v. Kissinger. We deal first with the statutory issue, then the constitutional questions.
 
 
 10
 * The District Court in this case, as in Halperin, ruled that ambiguity in 1969 surrounding the meaning of the national security clause of Title III,18 U.S.C. § 2511(3) (1976), foreclosed application of that statute to this wiretap program.[19] This was error. If the Smiths can demonstrate that there was no reasonable national security rationale supporting the wiretapping, Title III outlaws the surveillance that took place and provides for $100 in damages for each day of the wiretap plus punitive damages and attorney's fees.[20] Since there is nothing in the record before us that contradicts appellants' allegation that the wiretap was initiated to discover the sources for stories by Smith that were "personally embarrassing" to appellees but involved no danger to national security,[21] there is no basis for summary judgment for the defendants.[22]
 
 
 11
 In its examination of the national security rationale for this surveillance, the District Court on remand should note that Smith did not satisfy the three criteria established by the Nixon Administration for identifying surveillance subjects. He had no personal access to confidential information that might be disclosed in the future, and, according to the memorandum to the Attorney General apparently requesting the wiretap, the Government had no information on him "of an internal security nature."[23] Consequently, there seems to have been little reason to believe, under the Government's own guidelines, that Smith posed a continuing security risk. Of course, the outcome of this inquiry will hinge on facts adduced in the trial court, but we wish to emphasize that courts may not simply accept bland assurances by the Executive that a situation did, in fact, represent a national security problem requiring electronic surveillance.
 
 B
 
 12
 We also conclude that there was no basis for summary judgment on appellants' constitutional claims. The wiretap in this case appears to have violated the Fourth Amendment's warrant requirement.[24] Appellees would be entitled to immunity from an action for warrantless wiretapping if they can establish (1) that they had reasonable grounds to believe their actions were legal, and (2) that they did not act with malice or bad faith.[25] Appellants' allegation of bad faith,[26] however, has not been contravened in this record.
 
 
 13
 Equally, the District Court erred in holding that the Smith surveillance satisfied the "reasonableness" requirement of the Fourth Amendment because it only lasted for 89 days.[27] Such a determination depends on careful review of all the circumstances. Certainly, the memorandum apparently requesting authorization for the Smith wiretap established no reasonable grounds for surveillance.[28] The District Court properly distinguished the 89-day Smith wiretap from that in Halperin, which extended for 21 months, but the reasonableness of a surveillance depends on its length in the context of what is sought and what is discovered. A surveillance may be entirely unreasonable even though it lasts for only 30 days, or ten days.[29] In addition, factors other than length of wiretapping such as the justification for undertaking the surveillance and the manner of its conduct should be considered. Obviously, the choice of the target for surveillance must be defensible and cannot be based on the sort of "political" reasons that Smith claims led to the surveillance of his family.[30] In support of this contention he points to the distribution within the Government of summaries of the overheard conversations in June 1970, ten months after Smith left Washington for an academic fellowship in Massachusetts.[31] The national security need for such distribution is not immediately obvious. Thus, granting appellants all reasonable inferences from their complaint, we cannot say there are no genuine issues of material fact on the reasonableness claim.
 
 
 14
 Finally, it is relevant to the reasonableness determination that Smith was a working journalist. Wiretapping infringes the First Amendment rights of any target individual, as the courts have warned.[32] Although newsmen do not enjoy special legal privileges by dint of their employment,[33] "news gathering is not without its First Amendment protections * * *."[34] Smith's allegation that the surveillance was undertaken to "monitor" the sources of his stories closely tracks a warning from the Supreme Court:
 
 
 15
 Official harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification. * * * ([35]
 
 
 16
 Thus the District Court must consider Smith's profession as part of its finding on reasonableness, as outlined for the warrant-issuing process by Justice Powell in Zurcher v. Stanford Daily :
 
 
 17
 (A) magistrate asked to issue a warrant for the search of press offices can and should take cognizance of the independent values protected by the First Amendment * * * when he weighs such factors. * * * ([36]
 
 
 18
 Our attention to the particular First Amendment issues raised by Smith's profession does not suggest any lesser value for the First Amendment interests of all of the appellants in not having their private conversations overheard by the Government, but simply highlights one feature of this case.
 
 IV
 
 19
 The District Court also ruled that since the Smith surveillance took place in 1969, but this suit was not filed until 1976, the action was barred by the statute of limitations.[37] We believe that both the statutory and constitutional causes of action survive because the secrecy surrounding the wiretap program prevented public disclosure of it until 1973, and because before that time appellants could not through the exercise of due diligence have discovered the existence of the wiretap.
 
 
 20
 The Title III claims pose no statute of limitations problem because the Act itself imposes on the Government a duty to notify those persons whose conversations are overheard.[38] The Government's failure to meet this requirement would toll the statute of limitations. Some exceptions to this requirement have been recognized to protect individual privacy,[39] but that consideration could not apply to the Smiths, the targets of surveillance.
 
 
 21
 On the constitutional claims, we follow this court's ruling in Fitzgerald v. Seamans :[40]
 
 
 22
 Read into every federal statute of limitations, including the adoption of an analogous local statute of limitations, is the equitable doctrine that in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit. * * *
 
 
 23
 Although appellees insist that this holding only applies to cases involving fiduciary relationships, that interpretation ignores the facts of Fitzgerald. The plaintiff in that case, a Government employee, charged that several federal officials had discharged him in retribution for testimony he gave before Congress. Information about the involvement of a White House official in Fitzgerald's dismissal was kept secret until after the statute of limitations had run. This court permitted Fitzgerald to sue the White House official anyway, because in the face of an "invocation of governmental secrecy" the plaintiff could not have learned through the exercise of due diligence of the wrong that had been done to him behind the scenes.[41] There was clearly no fiduciary relationship, in the formal sense of that term, between the White House official and Fitzgerald, a middle-level employee in the Department of Defense. Accordingly, we conclude that this exception to the statute of limitations does not rely on the existence of a fiduciary relationship.[42]
 
 
 24
 Applying the "due diligence" standard to this case, we find no basis for summary judgment in favor of appellees on statute of limitations grounds. A wiretap is by nature secret, and extraordinary efforts were undertaken to conceal the surveillance program involved here.[43] Indeed, the amended complaint in this case alleges that appellees engaged in affirmative acts of concealment that prevented the Smiths from discovering the surveillance.[44] At this stage of the litigation we cannot say that there is no genuine issue of material fact as to whether Government secrecy foreclosed the Smiths from learning of the wiretap before it became public knowledge. We cannot impose an obligation on all citizens to initiate a triennial request of the Government as to whether they are under official surveillance. Possibly appellees can offer evidence that the Smiths could have acquired information about the wiretap but simply failed to take the needed steps. We must, however, reverse the summary judgment.
 
 V
 
 25
 Appellee Nixon moved to dismiss the Smith complaint on the ground that he was absolutely immune from civil suit as a former President. He now argues that the District Court's ruling should be interpreted as an acceptance of that claim, even though the court did not say so and, in fact, found Nixon liable in Halperin, the parallel civil damage action. This question, like the immunity for the other federal officials sued by the Smiths, is controlled by our Halperin opinion, which outlines the qualified immunity that applies to Executive acts taken in the course of duty.[45]
 
 
 26
 The District Court dismissed the action against C&P, which installed the wiretap, on the ground cited in the District Court's opinion in Halperin :
 
 
 27
 C&P's limited technical role in the surveillance as well as its reasonable expectation of legality cannot give rise to liability for any statutory or constitutional violation. * * * ([46]
 
 
 28
 We think this was the proper disposition. The telephone company did not initiate the surveillance, and it was assured by the highest Executive officials in this nation that the action was legal.[47]
 
 
 29
 Consequently, the judgment of the District Court is reversed and this case is remanded for proceedings not inconsistent with this opinion.
 
 
 30
 Reversed and remanded.
 
 
 
 *
 Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976)
 
 
 [1]
 The defendants, appellees here, were former President Richard Nixon, former National Security Adviser Henry Kissinger, former Attorney General John Mitchell, former presidential aides H. R. Haldeman and John Ehrlichman, FBI officials Cartha DeLoach and William Sullivan, and four unnamed FBI agents. Attorney General Griffin Bell and FBI Director William Webster were also sued as custodians of the records of the surveillance, and plaintiffs requested injunctive relief against them as to future surveillance and an order that records of the Smith wiretap be turned over to the plaintiffs
 
 
 [2]
 Pub.L. No. 90-351, 82 Stat. 212 (1968) (codified at 18 U.S.C. §§ 2510-2520 (1976))
 
 
 [3]
 Halperin v. Kissinger, 196 U.S.App.D.C. ----, 606 F.2d 1192 (1979)
 
 
 [4]
 Id., 196 U.S.App.D.C. at --- - ---, 606 F.2d at 1195-1196
 
 
 [5]
 Id
 
 
 [6]
 U. S. Said to Plan an Okinawa Deal Barring A-Bombs, N.Y. Times, June 3, 1969, at 1, col. 6
 
 
 [7]
 Statement of Information on Impeachment Hearings Before the House Committee on the Judiciary, Book VII, Part 1, 93d Cong., 2d Sess. 241 (1974) (hereinafter cited as Statement of Information ). Although the congressional report omitted specific references in order to protect the privacy of wiretap targets, Smith stated in an affidavit to the District Court in October 1976 that he had been identified as the subject of this memorandum. Joint Appendix (JA) 28a-29a
 
 
 [8]
 Memorandum from W. C. Sullivan to W. D. Ruckelshaus (May 11, 1973), in Statement of Information, supra note 7, at 186
 
 
 [9]
 See JA 81a-82a (Amended Complaint); Halperin v. Kissinger, supra note 3, 196 U.S.App.D.C. at ---, 606 F.2d at 1198
 
 
 [10]
 Smith stated in his October 1976 affidavit that from May 10 to June 24, 1973 he was on an extensive reporting assignment in Eastern Europe and that by the time he returned to Moscow the relevant newspaper clippings in his office had been thrown out. He also asserted that confusion in public reports on the period of the wiretapping led him to believe that he could not have been the target of electronic surveillance. Finally, Smith said that as a newsman in a hostile nation he was reluctant to "pursue an open legal confrontation with my own government on a matter which was very unclear." JA 24a-27a
 
 
 [11]
 JA 74a-87a
 
 
 [12]
 Appellee Nixon moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), JA 88a, while all appellees, including Nixon, asked for dismissal under Rule 12(b)(6) for failure to comply with the statute of limitations. JA 89a-90a
 
 
 [13]
 The extra-record evidence included congressional documents issued following investigation of national security surveillances and depositions taken in connection with Halperin v. Kissinger, supra note 3
 
 
 [14]
 Rule 56 provides for summary judgment when the papers filed with the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)
 
 
 [15]
 In Mazaleski v. Treusdell, 183 U.S.App.D.C. 182, 562 F.2d 701 (1977), the District Court had granted defendant's motion to dismiss even though both parties had submitted extra-record evidence. This court treated the ruling as an award of summary judgment and applied the standards of Rule 56. Id., 183 U.S.App.D.C. at 189, 562 F.2d at 708
 
 
 [16]
 See Jenkins v. McKeithen, 395 U.S. 411, 421-422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)
 
 
 [17]
 Adickes v. S. H. Kress & Co., 398 U.S. 144, 153, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)
 
 
 [18]
 Adickes v. S. H. Kress & Co., supra note 17, 398 U.S. at 159, 90 S.Ct. at 1609 ("burden of the moving party under Rule 56(c) to show initially the absence of a genuine issue concerning any material fact")
 
 
 [19]
 Smith v. Nixon, 449 F.Supp. 324, 326 (D.D.C.1978)
 
 
 [20]
 See Halperin v. Kissinger, supra note 3, 196 U.S.App.D.C. at --- - ---, 606 F.2d at 1204-1205. The private damage provision of Title III appears at 28 U.S.C. § 2520 (1976)
 
 
 [21]
 JA 83a (Amended Complaint)
 
 
 [22]
 As we noted in Halperin, even if defendants cannot show a sufficient national security rationale for the surveillance to prevent application of Title III, their understanding of the statute at the time of the wiretap would be relevant to establishing a qualified immunity defense. Halperin v. Kissinger, supra note 3, 196 U.S.App.D.C. at ---, ---, 606 F.2d at 1209, 1210-1211
 
 
 [23]
 See text at note 7 Supra
 
 
 [24]
 On the question of retroactive application of the Fourth Amendment's warrant requirement to national security surveillances following United States v. United States District Court (Keith), 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 572 (1972), and Zweibon v. Mitchell (Zweibon I), 170 U.S.App.D.C. 1, 516 F.2d 594 (1975) (En banc ), Cert. denied, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976), See our ruling today in Zweibon v. Mitchell (Zweibon III), 196 U.S.App.D.C. ---, 606 F.2d 1172 (1979)
 
 
 [25]
 See Halperin v. Kissinger, supra note 3, 196 U.S.App.D.C. at --- - ---, 606 F.2d at 1208-1220
 
 
 [26]
 JA 83a (Amended Complaint)
 
 
 [27]
 Smith v. Nixon, supra note 19, 449 F.Supp. at 326
 
 
 [28]
 See text at note 7 Supra
 
 
 [29]
 Cf. Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) (striking down state law authorizing 60-day wiretap without a warrant)
 
 
 [30]
 The House Judiciary Committee described the wiretap program involved here as conducted for "political purposes." H.R. Rep. No. 93-1305, 93d Cong., 2d Sess. 35 (1974); See Halperin v. Kissinger, supra note 3, 196 U.S.App.D.C. at --- n.82, 606 F.2d at 1205 n.82
 
 
 [31]
 JA 81a (Amended Complaint). Appellants also argue that the Government failed to minimize the intrusiveness of the wiretapping. Id
 
 
 [32]
 E. g., Keith, supra note 24, 407 U.S. at 313-314, 92 S.Ct. 2125
 
 
 [33]
 See Branzburg v. Hayes, 408 U.S. 665, 684-686, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)
 
 
 [34]
 Id. at 707, 92 S.Ct. at 2670. This court's holding in Reporters Committee for Freedom of Press v. AT&T, 192 U.S.App.D.C. 376, 593 F.2d 1030 (1978), Cert. denied, 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979), which approved acquisition of journalists' long-distance telephone billing records by law enforcement agencies without notice to the journalists, is not controlling here. Compared to a review of billing records, the wiretapping program in this case is a much more intrusive invasion of any citizen's rights and a greater restriction on a journalist's professional freedom. Moreover, the alleged political motive behind the surveillance of the Smiths further calls into question the actions of appellees
 
 
 [35]
 Branzburg v. Hayes, supra note 33, 408 U.S. at 707-708, 92 S.Ct. at 2670
 
 
 [36]
 436 U.S. 547, 570, 98 S.Ct. 1970, 1984, 56 L.Ed.2d 525 (1978) (Powell, J., concurring); See Carey v. Hume, 160 U.S.App.D.C. 365, 370, 492 F.2d 631, 636, Cert. dismissed, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974)
 
 
 [37]
 Smith v. Nixon, supra note 19, 449 F.Supp. at 327. The applicable statutory provision is 12 D.C.Code § 301(8) (1973)
 
 
 [38]
 18 U.S.C. § 2518(8)(d) (1976)
 
 
 [39]
 See United States v. Donovan, 429 U.S. 413, 430, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977)
 
 
 [40]
 180 U.S.App.D.C. 75, 83, 553 F.2d 220, 228 (1977)
 
 
 [41]
 Id., 180 U.S.App.D.C. at 83-84, 553 F.2d at 228-229
 
 
 [42]
 See Japanese War Notes Claimants Ass'n v. United States, 373 F.2d 356, 178 Ct.Cl. 630, Cert. denied, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967)
 In Lee v. Kelley, D.D.C. Civil Action No. 76-1185, January 31, 1977, the District Court refused to toll the statute of limitations for damage claims for Government surveillance of the civil rights movement in the 1960s. The court ruled that the plaintiffs there were on notice as to the wiretapping because by 1968 and 1969, "the nation's leading newspapers were rife with accounts of (these) buggings * * *." Slip op. at 3. Using the same approach in this case, we cannot conclude on this record that appellants were on notice as to the existence of this wiretap before May 1973.
 
 
 [43]
 See Halperin v. Kissinger, supra note 3, 196 U.S.App.D.C. at ---, ---, 606 F.2d at 1197, 1198-1199
 
 
 [44]
 JA 82a-83a. Appellants charge fraudulent concealment in appellees' failure to inform Justice Department officials of the existence of the wiretap records, which were relevant to the criminal prosecution in United States v. Ellsberg and Russo, No. 9373 (C.D. Cal. 1971), and in the incorrect denial of 1973 press reports of the wiretapping program. Such affirmative acts, according to Fitzgerald v. Seamans, supra note 40, 180 U.S.App.D.C. at 83, 553 F.2d at 228, would provide the "aggravation" needed to bring this case within the traditional view that the statute of limitations is tolled when there has been fraudulent concealment of the injury that would serve as the basis for legal action. See Holmberg v. Armbrecht, 327 U.S. 392, 396-397, 66 S.Ct. 582, 90 L.Ed. 743 (1946)
 
 
 [45]
 Halperin v. Kissinger, supra note 3, 196 U.S.App.D.C. at --- - ---, 606 F.2d at 1208-1213
 
 
 [46]
 Smith v. Nixon, supra note 19, 449 F.Supp. at 326
 
 
 [47]
 It is instructive that this holding, which recognizes an exception to the rule that a mistake of law is no defense to liability, would apply in this case even if criminal liability were at issue. The Model Penal Code provides:
 A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when:
 (b) he acts in reasonable reliance upon an official statement of the law * * * contained in * * * (iv) an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense.
 Model Penal Code § 2.04(3)(b) (Tent. Draft No. 11 1960). See United States v. Barker, 178 U.S.App.D.C. 174, 189-191, 546 F.2d 940, 955-957 (1976) (Merhige, J., concurring).