# 95 DTA 122

## TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL VI
### DE CAGUAS/HUMACAO/GUAYAMA
### PANEL I

GENERAL BUILDERS CONSTRUCTION
Peticionario

v.

EL FENIX DE P.R.
Recurridos

Núm. KLCE-95-00050

San Juan, Puerto Rico, a 12 de junio de 1995

Panel integrado por su presidente, Juez señor Amadeo Murga
y los Jueces señora Pesante Martínez y señor Rivera Pérez

Amadeo Murga, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA PARCIAL

La peticionaria General Builders Construction Corporation recurre de una resolución del Hon. Ramón Orta Berríos, Juez Superior del Tribunal de Primera Instancia de Puerto Rico, Sala de Guayama. Este se negó a dictar sentencia sumaria a base de que había controversia real en cuanto *"...a dos hechos materiales determinantes para la solución de este caso. Los mismos consisten en lo siguiente: 1) el monto de la deuda por la cual debe responder la fiadora, El Fénix de Puerto Rico y (2) la novación del contrato de fianza".*

La peticionaria solicitó la reconsideración, suplicando que a tenor con lo resuelto en *Camaleglo v. Dorado Wings,* 117 D.P.R. 20 (1986), se dictara una sentencia sumaria interlocutoria de carácter parcial adjudicando la responsabilidad de El Fénix de Puerto Rico a tenor con sus obligaciones contractuales y que se señalara el caso para la fijación de los daños y lo relativo a la novación. Declarada sin lugar, se instó el presente recurso. El 30 de marzo de 1995 expedimos la siguiente orden para mostrar causa:

*"Examinada la petición de Certiorari y lo resuelto por nuestro Tribunal Supremo en Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20 (1986) se ordena a los recurridos El Fénix de P.R. y Raúl Ortiz Associates, Inc. que muestren causa dentro de los próximos 20 días de por qué no debemos revocar la resolución recurrida y en su lugar dictar una Sentencia Parcial Interlocutoria adjudicando la responsabilidad de ambas recurridas a tenor con el contrato de obras de construcción y el contrato de fianza expedido por El Fénix de P.R. el 9 de septiembre y que devolvamos el caso a instancia para que señale una vista sobre el monto monetario de la responsabilidad de ambas recurridas a tenor con dichos contratos y determine además cualquier responsabilidad adicional que pudiera tener El Fénix de P.R. a tenor con cualquier acuerdo posterior entre las partes que pudiera novar modificativamente el contrato de fianza entre las partes".*

La parte recurrida ha comparecido en un escrito en que en síntesis reproduce el presentado en instancia en oposición a la solicitud de sentencia sumaria. Esto nos lleva a proceder conforme a lo intimado en nuestra orden de mostrar causa. Revocamos por tanto la resolución recurrida y en su lugar dictamos una sentencia parcial interlocutoria adjudicando la responsabilidad de El Fénix de P.R., Inc. y devolvemos el caso para que se proceda a la consideración de los daños incluyendo lo relativo a la novación modificativa del contrato de fianza entre las partes.

### I
Los hechos procesales al recurso son los siguientes:

Con fecha 2 de marzo de 1993 la peticionaria-recurrente General Builders Construction Corp. (General Builders), presentó una demanda en contra de El Fénix de P.R., Inc. (El Fénix) y de Raúl Ortiz Associates, Inc. (Ortiz). Al último le imputó el incumplimiento de un contrato de construcción para realizar ciertas obras relacionadas con el movimiento de tierra para la construcción de un proyecto a ser conocido como Plaza Guayama. Alegó en la demanda que el trabajo se había ajustado por la suma de $500,000. Que del trabajo Ortiz únicamente realizó el equivalente al 12% del total habiendo recibido pagos ascendentes a la suma de $101,500 y abandonado la obra en violación del contrato. Alegó asimismo, otras dos causas de acción. Una en relación al no pago por Ortiz de ciertos equipos arrendados. La otra, el haber causado daños mientras realizaba trabajos de explosión para remover ciertas rocas.

Se incluyó como co-demandado a El Fénix quien había prestado una fianza sobre cumplimiento y pago (payment and performance bond) a favor de General Builders en garantía de las obligaciones del co-demandado Ortiz.

La demanda fue contestada y se procedió al descubrimiento de prueba. Para el 8 de julio de 1994 las partes lo habían terminado y prepararon un informe sobre conferencia preliminar. En este, El Fénix consignó que las controversias a ser resueltas eran dos. *"(1) Determinar si medió o no circunstancias que liberen de responsabilidad al contratista Raúl Ortiz del cumplimiento del contrato suscrito entre éste y General Builders." "(2) Determinar el alcance de la responsabilidad por parte de El Fénix en cuanto al alegado incumplimiento por parte del afianzado Raúl Ortiz Associates en la finalización de la obra convenida con General Builders el 17 de julio de 1991 "* Las partes estipularon también ciertos hechos a saber:

*"1. La parte demandante suscribió contrato de obra con Raúl Ortiz Associates, Inc. con fecha 17 de julio de 1991.*

*2. Raúl Ortiz Associates, Inc. con fecha 10 de octubre de 1991, interrumpió sus labores en el proyecto de la parte demandante y no terminó los mismos.*

*3. La obra contratada con Raúl Ortiz Associates, Inc. fue terminada por General Builders sin que El Fénix aportara fondos, contratara nuevo contratista o asumiera la terminación de la obra o cualquier otro derecho conferido por virtud del contrato de fianza.*

*4. Con fecha de 19 de febrero de 1992 General Builders contrató con Víctor Reymundi Construction para que efectuara trabajos en los terrenos de Plaza Guayama."*

El 3 de octubre siguiente General Builders presentó una Solicitud de Sentencia Sumaria apoyada en numerosa prueba documental. El día 12, El Fénix se opuso alegando que existían hechos materiales en controversia en torno a la reclamación de la fianza los cuales requerían la celebración de una vista plenaria. Admitió que era un hecho estipulado que Raúl Ortiz Associates había interrumpido su labor y no terminó la obra siendo General Builders quien la finalizara. Agregó sin embargo:

*"Existen una serie de hechos materiales al litigio en cuestión que requieren la ponderación y meditación de ese Honorable Tribunal para poder determinar y adjudicar las responsabilidades y derechos entre las partes litigantes. En primer lugar, cabe preguntarse por qué si una obra convenida por $500,000.00, dentro de los límites de razonabilidad para el contratista general, en este caso General Builders, de $450,000.00, al éste concluir la misma su costo de finalización es de $890,700.25. También hay que preguntarse por qué razón si la obra se iba a culminar en 90 días, al propio contratista, General Builders, le tomó según éstos, cerca de año y medio (1 1/2) en finalizarlo. Entonces, se infiere lógicamente que los estimados preparados por General Builders fueron irreales o los costos reclamados ahora en la Demanda de autos, son unos que no tienen correlación con los gastos reales o con las partidas que en derecho tengan a bien obtener mediante las adjudicaciones de los méritos de este caso.*

*La parte demandante pretende a través de prueba documental no admisibles en estos momentos, como lo son correspondencias suscritas por el propio demandante, manuscritos preparados por el demandante y donde hace una serie de conclusiones que no tienen base sobre otros hechos consecutivos, se le imponga una responsabilidad prima facie al demandado sin pasar prueba en la Vista en sus Méritos."*

En apoyo de tal oposición incluyó copia de parte de una deposición tomada al Presidente de General Builders y la contestación a unos interrogatorios firmada por Jaime Berríos Rivera, Ajustador de Seguros de El Fénix, en las cuales éste sostuvo que General Builders *"asumió por su cuenta la terminación de la obra sin permitir a El Fénix el realizar el análisis pertinente a los fines de decidir cuál de las dos alternativas descritas en la fianza para la*

*terminación de la obra sería implementada, ni negociar cualquier otro acuerdo entre las partes para dicha terminación. Estas acciones pueden constituir la liberación de El Fénix de las obligaciones contraídas bajo la fianza y la contribución de la parte demandante a causar los daños que se reclaman en esta acción."* Apéndice IV, página 409.

General Builders replicó a la oposición sosteniendo que los hechos señalados por El Fénix como en controversia constituían más bien interrogantes retóricas en torno al aspecto del costo final de la obra y que en realidad no se había puesto en controversia los hechos alegados en la moción de sentencia sumaria.

General Builders había predicado su solicitud de sentencia sumaria a base de una serie de hechos sobre los cuales entendió que no había controversia y los que se encuentran consignados en su solicitud de sentencia sumaria apoyados en prueba documenal a saber:

*"1. General Builders contrató los servicios de Raúl Ortiz Associates, Inc., mediante el contrato de obra suscrito el 17 de julio de 1991. Exhibit "1" del Apéndice 3 de la Solicitud de Sentencia Sumaria.*

*2. Conforme el referido contrato, el codemandado Raúl Ortiz se comprometió a realizar las obras en el término de noventa (90) días a partir de la orden de General Construction para comenzar los trabajos. Exhibit "1" del Apéndice 3 de la Solicitud de Sentencia Sumaria, página 4, cláusula NOVENA.*

*3. El mismo 17 de julio de 1991, la demandante General Builders notificó a Raúl Ortiz la "orden para proceder a comenzar las obras cubiertas en el contrato." Exhibit "1" del Apéndice 3, carta de adjudicación con fecha del 17 de julio.*

*4. De acuerdo a lo anterior el codemandado Raúl Ortiz debió terminar las obras de removido de tierra el 19 de octubre de 1991. (En virtud de la cláusula DECIMOSEXTA del Contrato de obra suscrito entre las partes, los trabajos podrían comenzarse dos días después de General Builders darle la orden de comienzo al subcontratista).*

*5. El codemandado El Fénix expidió una fianza de cumplimiento ("Performance Bond") y otra de Labor y Materiales ("Payment Bond", por $500,000 e identificadas por los números SMR-11602, designando como beneficiaria a General Builders y garantizando la ejecución de las obras responsabilidad de Raúl Ortiz. Véase Exhibits "2" y "2.1" del Apéndice 3.*

*6. El contrato de obra fue adoptado por referencia en los contratos de fianza suscritos por El Fénix, por lo que ésta se obligó al cumplimiento de todas las obligaciones contenidas en el mismo en caso de que su afianzado incumpliera. Exhibits "2" y "2.1" del Apéndice 3.*

*7. El codemandado Raúl Ortiz abandonó las obras el 10 de octubre de 1991. (Véase Estipulaciones Sobre Hechos contenidas en el Informe de Conferencia con Antelación al Juicio, Apéndice 8, pág. 9-B-2) y Exhibit "14" del Apéndice 3.*

*8. Al momento del abandono de la obra, al codemandado Raúl Ortiz, tan sólo se le habían certificado obras ascendentes a un 17%. Véase Exhibits "3" y "3.1" del Apéndice 3.*

*9. Con fecha de 24 de octubre de 1991, la demandante notificó a Raúl Ortiz que establecería la correspondiente reclamación a la compañía fiadora El Fénix. Exhibit "5" del Apéndice 3.*

*10. Con fecha de 25 de octubre de 1991 la parte demandante notificó al Fénix de Puerto Rico sobre el abandono y paralización de la obra del codemandado Raúl Ortiz, estableciendo*

*reclamación formal contra las fianzas de Payment y Performance Bond. Exhibit "6" del Apéndice 3.*

*11. Con fecha de 22 de octubre y 31 de octubre de 1991 el Fénix se comprometió a través del Sr. Enrique Ferreira a proveer los financiamientos necesarios para lograr la terminación de la obra. Exhibits "7" y "7.1" del Apéndice 3.*

*12. Con fecha de 11 de diciembre, General Builders notificó al Fénix que la obra seguía paralizada y que las representaciones sobre la continuación y terminación de éstas no se habían cumplido y requirió terminación de las mismas bajo el contrato de fianza. Exhibit "8" del Apéndice 3.*

*13. El Fénix de Puerto Rico nunca proveyó fondo alguno para la terminación de la obra ni contrató nuevo contratista ni cumplió con asumir la terminación de la obra. Ver estipulaciones sobre hechos, Informe de Conferencia con antelación al juicio. Apéndice 8, pág. 9, inciso B-3.*

*14. General Builders informó al Fénix que ante su inacción procedería a la continuación y terminación de la obra con cargos a la fianza de Payment & Performance Bond. Exhibit "9" del Apéndice 8.*

*15. Con fecha 19 de agosto de 1991, General Builders suscribió dos contratos de arrendamiento de equipo pesado con Raúl Ortiz, relativo al equipo "Traxcavator 977-1" y "Caterpillar D-9", por los cuales Raúl Ortiz debió pagar la cantidad de $3,200.00 y $7,000.00 respectivamente por el arrendamiento de dichos equipos. Exhibits "11, "11.1" y "14" del Apéndice 3.*

*16. Con fecha 12 de agosto de 1992, General Builders notificó a El Fénix de Puerto Rico su reclamación por concepto de la deuda de arrendamiento de equipo pesado contraída por Raúl Ortiz en la cantidad de $10,200.00. Exhibit "11.2". La cantidad de $10,200.00 al presente no ha sido satisfecha por El Fénix. Exhibit "14"del Apéndice 3.*

*17. Raúl Ortiz y/o sus empleados, mientras practicaban trabajos de dinamitado provocaron una explosión que lanzó pedazos de roca que impactaron el techo de los teatros Wometco ocasionando daños al techo, uretano y columnas. Exhibit "14" del Apéndice 3.*

*18. Los costos de reparación por los daños al techo, acrílicos y columnas, uretano ascendieron a la cantidad de $11,430.00. Exhibits "14" y "15" del Apéndice 3.*

*19. El Fénix tenía expedida una póliza de responsabilidad pública "Commercial General Liability Coverage Part Declaration", número CP-008294. Exhibit "13" del Apéndice 3.*

*20. El Fénix responde de los daños ocasionados al techo de Wometco como resultado de la explosión provocada por Raúl Ortiz y/o subcontratista. Exhibit "16" del Apéndice 3."*

El Tribunal, según hemos expresado antes, declaró sin lugar la solicitud de General Builders por los dos fundamentos expuestos o sea, el monto de la deuda y la cuestión de la novación modificativa de la fianza.■

En su moción en cumplimiento de la orden para mostrar causa, El Fénix expresa cinco hechos que estima están en controversia a saber:

*"A. El porqué en otras gestiones previas al contrato de obras el 17 de julio de 1991, el contratista general, General Builders, había convenido con Raúl Ortiz & Asociados una serie*

*de obras sin que se le requiriera una fianza para la ejecución y garantía de la obra;*

*B. El porqué a este momento General Builders no ha presentado al Tribunal de Instancia, ni al Tribunal Apelativo, ni a la parte demandada el estimado alegado que se hizo en el cual se arroja como costo de obra estimado la suma de $450,000.00 que fue el que se utilizó para adjudicar a favor de Raúl Ortiz & Asociados contrato en litigio;*

*C. Porqué se le permitió a Raúl Ortiz & Asociados a comenzar la obra sin una fianza expedida tal y como lo requería el contrato convenido el 17 de julio de 1991.*

*D. El porqué el contratista general, General Builders, a los cuarenta y cinco (45) días, luego de transcurrido el comienzo de la obra, entiéndase una obra convenida para realizarse en noventa (90) días, no rescindió el contrato teniendo conocimiento de que a ese momento solamente se había concluido con un doce (12) por ciento de la obra, aproximadamente;*

*E. Qué razón existe para que General Builders, si alega que la obra convenida con Raúl Ortiz se debió culminar en noventa (90) días al propio contratista que tiene una capacidad mayor de realización de trabajo e inclusive, le arrendó equipo a Raúl Ortiz para poder realizar la obra en cuestión, se tomaron según éstos cerca de año y medio para realizarlo."*

Ante el cuadro procesal y fáctico expuesto debemos determinar si procedía se dictara la sentencia sumaria interlocutoria según la solicitud de General Builders.

## III

La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, ha provisto un mecanismo de operación rápida cuando la controversia entre las partes, no envuelve la necesidad de celebrar una vista para adjudicar los hechos y la función judicial se limita por tanto a la aplicación del derecho. El mecanismo jurídico de la sentencia sumaria puede darse en varios escenarios. El más sencillo es cuando las partes están de acuerdo que no hay controversia en cuanto a los hechos y ambas, a base de los mismos hechos, desean que el tribunal interprete el derecho a su favor. Otro escenario es cuando los hechos van a surgir de la interpretación que haga el tribunal de documentos que las partes no cuestionan. En ambos escenarios ninguna de las partes se resiste a la utilización del mecanismo de la sentencia sumaria y confían en que el tribunal interpretará los hechos estipulados o que surgen de los documentos aplicando el derecho a su favor.

La aplicación del mecanismo de la sentencia sumaria se torna más problemático cuando cualquiera de las partes resiste la utilización del mismo por la parte adversa. En la mayoría de los casos, ésto derrota el uso del mecanismo cuando el promovido puede presentar alguna prueba (por frágil que sea) de que la existencia de alguno de los hechos materiales está en controversia. Ante esta situación, es la norma de nuestro Tribunal Supremo, permitirle a la parte promovida su día en corte y no despachar por sentencia sumaria un caso en que algún hecho material debía haberse adjudicado en una vista. *Jorge et al v. Universidad Interamericana,* 109 D. P.R. 505, 512 (1980)█

Ahora bien, existen situaciones en que la parte que quiere resistir la sentencia sumaria tropieza con el problema de que le resulta difícil o imposible contradecir los hechos materiales en que la otra basa su solicitud. En tales circunstancias para derrotar la moción de sentencia sumaria no puede meramente descansar en sus alegaciones negando la existencia de los hechos que la otra presenta en apoyo de su solicitud de sentencia sumaria. Como reiteró nuestro Tribunal Supremo en *La Santa Piñeiro v. Retto Inc.,* 100 D.P.R. 694, 698, 699 (1972).

*"...cuando el que solicita se dicte sentencia sumaria ha cumplido con la obligación de*

*demostrar que no hay controversia en cuanto a los hechos y que procede se dicte sentencia como cuestión de derecho, la otra parte contra quien se solicita la sentencia no puede derrotar la moción cruzándose de brazos y descansar, como lo hizo en este caso, en lo expuesto en las alegaciones de su demanda. 'Está en la obligación de demostrar que tiene prueba para substanciar sus alegaciones' (cita omitida)".*

Tampoco la prueba que viene obligada a ofrecer para derrotar la moción de sentencia sumaria puede consistir de declaraciones juradas que contengan sólo conclusiones carentes de hechos específicos que las apoyen y por lo tanto, que carezcan de valor probatorio suficiente para demostrar la existencia del hecho que se pretende establecer. *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714, 722 (1986). Tampoco tiene valor el oponer las teorías del caso de la parte promovida lo que no constituye prueba. *Asociación Auténtica de Empl. v. Municipio de Bayamón,* 111 D.P.R. 527, (1981).

Tiene que ser así pues de otra manera el procedimiento de sentencia sumaria se convertiría en uno voluntario equivalente al procedimiento dispuesto en la Regla 5.2 de Procedimiento Civil que dispone para la adjudicación de un pleito por estipulación de hechos situación que en el mundo real se da excepcionalmente. En otras palabras, la Regla 36 contempla y provee las herramientas para que se use contra una parte reacia a que el caso se adjudique a través de la sentencia sumaria. Esto se logra a través del mecanismo de requerirle que la promovida claramente exponga y sostenga con prueba admisible los hechos que traban una controversia fáctica que exige su adjudicación en juicio.

El ilustrado comentarista Cuevas Segarra ▌ resume la obligación de la promovida:

*"[e]s su deber exponer la existencia de hechos en controversia genuinos, los cuales prevengan que el juicio sea una formalidad innecesaria". Turner v. Loc. No. 302 Intern. Broth. of Team., 604 F.2d 1219, 1228 (1979). Véase además Smith v. Nixon, 606 F.2d 1183 (1979). Una alegación de que quizás en el juicio pueda demostrar ciertos hechos es insuficiente para derrotar una moción de sentencia sumaria, Pelutto v. Lan Towing Co., 604 F.2d 396, 403 (1979). Es decir, el promovido debe afirmativamente demostrar la existencia de hechos en disputa y no simplemente descansar en la esperanza de desacreditar la prueba del peticionario en el juicio. Matter of Citizens Loan Co., 621 F.2d 911, 913 (1980). La existencia de hechos en disputa deben ser pertinentes a las controversias legales envueltas. Tercket v. Lund, 623 F.2d 29, (1980). El promovido no puede valerse de la lacónica aseveración de que los hechos están en controversia. Tiene el deber afirmativo de presentar prueba que sostenga la existencia de hechos controvertidos. Palila v. Hawaii Dept. of Land & Natural Resources, 639 F.2d 495, 497 (1981).*

*Aun cuando la orden de la conferencia con antelación al juicio especificase ciertas controversias que deben ir al juicio, el tribunal puede subsiguientemente conceder una moción de sentencia sumaria sobre la base de que tales controversias no están realmente en disputa. Securities and Exchange Commission v. Murphy, 626 F.2d 633 (1980)".*

Aun estando en disputa ciertos hechos, el tribunal podrá dictar sentencia sumaria en cuanto a aquella parte de la controversia en que no haya hechos genuinamente en disputa. Como señalan los comentarios a la Regla 36.3 en su parte final, 32 L.P.R.A. Ap. III p. 276:

*"una redacción general y más abarcadora --como es la que se propone-- permitirá que se dicte sentencia sumaria parcial de cualquier controversia entre las partes siempre que la misma pueda ser separada de las controversias restantes. De esta manera se fomentará una más pronta y económica solución de los pleitos, ya que '[u]sada con sabio discernimiento, la sentencia sumaria es un valioso mecanismo procesal para descongestionar los calendarios judiciales. No debemos reducir su eficacia con limitaciones que en nada contribuyen a una*

*mejor administración de justicia, pero que pueden retardarla. Padín v. Rossy,* 100 D.P.R. 259, 263 (2971).

Ese es en suma el espíritu de la regla y en nuestra función judicial debemos darle vitalidad para que se ponga en práctica su propósito, *Camaleglo v. Dorado Wings, Inc.,* 118 D.P.R. 20, 25 (1986).

La aplicación de estos principios a la presente controversia determina su resultado. Veamos.

No había controversia alguna de que Ortiz había incumplido el contrato de obra que llevó a cabo con General Builders el 17 de julio de 1991. Tampoco había controversia alguna de que El Fénix había expedido una fianza de pago y cumplimiento a favor de General Builders. ¿Ante esas circunstancias, cúal era la defensa de El Fénix ante la reclamación de General Builders? En el informe de conferencia preliminar entre abogados El Fénix expresó que existían dos controversias: si mediaban circunstancias que liberaban al contratista Ortiz del cumplimiento del contrato suscrito entre él y General Builders y el alcance de la responsabilidad de El Fénix en cuanto al alegado incumplimiento de Ortiz. Podemos ver que, a la altura del informe de conferencia preliminar entre abogados, El Fénix tomó la posición que podían haber circunstancias que liberaran de responsabilidad al contratista Ortiz. Sin embargo, cuando mediante solicitud de sentencia sumaria la demandante presentó prueba de los 20 hechos que hemos transcrito, como no en controversia, El Fénix no produjo prueba de las circunstancias que liberaran a Ortiz de su obligación como contratista. Como bien señala General Builders, se limitó hacerse una serie de preguntas retóricas en las cuales cuestionaba la razonabilidad del costo de la terminación de la obra por General Builders y el estimado acordado de 90 días de duración para realizar la obra. De ahí infirió o que los costos de terminación habían sido excesivos o General Builders durante las negociaciones había hecho expresiones en las cuales subestimaba los costos de llevar a cabo la obra.

Nada de lo aducido era suficiente para derrotar la moción de sentencia sumaria parcial que solicitaba General Builders. La insinuación desprovista de prueba de que General Builders llevó a Ortiz a ofrecer llevar a cabo una obra por $500,000 cuyo costo podría ser mayor, era insuficiente para derrotar la solicitud de sentencia sumaria. Esas insinuaciones ni siquiera se hicieron en el informe de conferencia entre abogados cuando se expresaron las controversias.

En su escrito en cumplimiento de nuestra orden de mostrar causa El Fénix lo que hace es repetir las interrogantes que presentó como oposición a la sentencia sumaria añadiendo otras tres. Consisten en que General Builders había llevado a cabo anteriormente contratos con Ortiz sin requerirle fianza; que le permitió a Ortiz comenzar sin la fianza estar expedida; y que no rescindió el contrato a pesar de que a los 45 días Ortiz solamente había realizado un 12%.

Las tres interrogantes insinuaron levemente alguna conducta incorrecta de parte de General Builders en sus relaciones con Ortiz. Aparte de que no pasan de ser meras insinuaciones, las mismas son inmateriales a la resolución de la controversia. Tampoco contravierten los hechos sostenidos por prueba de General Builders en su solicitud de sentencia sumaria.

Lo que nos lleva a concluir que en el presente caso, El Fénix quizo resistir la sentencia sumaria, no a base de hechos que trabaran una controversia que debería adjudicarse en juicio en vivo ante el tribunal sino a base de insinuaciones y especulaciones. Mal haríamos nosotros si permitiéramos que a base de esos fundamentos se derrote el propósito de la sentencia sumaria que es lograr, tan pronto como sea posible, la adjudicación justa de las controversias de manera que se confíe en el proceso judicial para resolver las mismas.

A la luz de lo anterior, procedemos a dictar sentencia sumaria interlocutoria según intimado determinando los hechos enumerados del 1 al 20 según expresados anteriormente en esta sentencia. Devolvemos el caso al juez de instancia para que conforme a la Regla 1 de Procedimiento Civil que consagra el interés en la prontitud de la resolución de los pleitos, proceda a señalar una vista para la determinación de los daños y determine además cualquier responsabilidad adicional que pudiera tener El Fénix de Puerto Rico, Inc. a tenor con cualquier acuerdo posterior entre las partes que pudiera novar modificativamente el contrato de fianza entre éstas.

Concluimos finalmente que El Fénix ha sido temeraria al negar la existencia de su responsabilidad y retrasar el pleito. La suma de honorarios que deberá pagar a General Builders deberá ser determinada por el juez de instancia luego que se lleven a cabo el resto de los procedimientos en el caso.

Por los fundamentos antes expuestos se expide el recurso y se revoca la resolución recurrida. Se emite sentencia sumaria parcial de naturaleza interlocutoria por virtud de la cual se adjudica la responsabilidad de El Fénix de Puerto Rico de conformidad a lo anteriormente discutido.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

María de la C. González Cruz
Secretaria General

### ESCOLIOS 95 DTA 122

1. Esta última controversia tiene que ver con el reclamo de General Builders de que El Fénix responde más allá de los $500,000, límite de su fianza a virtud de acuerdos posteriores tomados los días 22 y 31 de octubre en los que alegadamente El Fénix se comprometió a obtener financiamiento y lograr la terminación de la obra, lo que no hizo. Esta reclamación no fue alegada en la demanda. Sin embargo, en su solicitud de sentencia sumaria General Builders hizo referencia a estos acuerdos y reclama también su cumplimiento. General Builders, a los fines de su recurso solicitando se dicte sentencia sumaria interlocutoria, no insiste que se resuelva esta controversia por sentencia sumaria.

2. En el anterior caso el Tribunal de Instancia había resuelto que había controversia de hechos y se negó a dictar sentencia sumaria. La promovente recurrió y el Tribunal Supremo inicialmente determinó que no había controversia de hechos y dictó sentencia sumaria a favor de la parte promovente de la moción. Más tarde reconsideró y estimó que en una carta presentada por la promovida trababa una controversia de hechos en el caso.

3. *Práctica Procesal Puertorriqueña,* Volúmen II, *Procedimiento Civil,* **Publicaciones J.T.S.,** página 191.